### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN FREDENDALL,** | : | **CIVIL ACTION NO. 1:26-CV-1165** |
| | : | |
| **Plaintiff** | : | **(Judge Neary)** |
| | : | |
| **v.** | : | |
| | : | |
| **NEW YORK STATE** | : | |
| **DEPARTMENT OF JUSTICE,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

This is a prisoner civil rights case in which plaintiff alleges civil rights violations at various state and federal prisons located in the state of New York as well as Lewisburg Federal Correctional Institution ("FCI-Lewisburg"). The claims arising from FCI-Lewisburg have been severed from the original action in the Northern District of New York and transferred to this district. The court will dismiss the FCI-Lewisburg claims without leave to amend and close this case.

### I.    <u>Factual Background & Procedural History</u>

Plaintiff, Brian Fredendall, is a federal prisoner currently confined in FCI-Otisville in Otisville, New York. He filed this case in the United States District Court for the Northern District of New York on April 1, 2026. (Doc. 1). The complaint alleges civil rights violations at several federal, state, and county prisons located in New York, as well as civil rights violations occurring in FCI-Lewisburg during a two-day period in November 2025. (<u>Id.</u>) On May 1, 2026, the Northern

District of New York severed the FCI-Lewisburg claims from the case and transferred them to this district. (Doc. 4).

With respect to Fredendall's time in FCI-Lewisburg, the complaint alleges that he arrived at the prison by van on November 5, 2025. (Doc. 1 at 14). Fredendall was allegedly in a wheelchair due to injuries purportedly suffered at prisons in New York at the time, but the employees at FCI-Lewisburg purportedly did not help him out of the van and refused to give him a wheelchair. (Id.) After an unspecified amount of time, the officers from the Delaware County, New York prison that had transported him to the prison assisted him in getting out of the van. (Id.) "The doctor" and a "bunch of" correctional officers purportedly came out of FCI-Lewisburg and acted "rude" to Fredendall, allegedly insisting that Fredendall could walk and that he was lying about his need for a wheelchair. (Id.) The doctor and correctional officers eventually got Fredendall a wheelchair, but allegedly made him walk "2-3 steps" to get into it. (Id.) The correctional officers then purportedly called him "names," including, "cho mo," which the complaint states is short for "child molester." (Id.) One officer allegedly questioned whether Fredendall needed a wheelchair, told him that he "could run if a 9 year old walked by" and said that Fredendall "tell[s] little kids to spread their cheeks." (Id.) The "doctor" allegedly compelled Fredendall to stand during all of this verbal abuse, despite him being in pain from his previous injuries and the van trip to the prison. (Id.)

The complaint alleges that the "lady" who was "putting everything in the computer" told Fredendall, "If I were you, I would get up and start walking so you

can defend yourself." (Id.) Fredendall told her that he could not stand up, but she purportedly responded, "shut the fuck up and stop talking to me." (Id.) She then allegedly told Fredendall that she did not care if Fredendall made a complaint against her and told him to make sure to spell her name correctly. (Id.) She then allegedly spelled her name for him.[1] (Id.)

As Fredendall was speaking with her, two captains and other correctional officers allegedly "storm[ed] in" to the office. (Id.) The officers closed the door and appeared to lock it, at which point one of the officers allegedly "slam[med]" handcuffs onto Fredendall. (Id.) The two captains stated that they had heard that Fredendall told "the lady" to "shut the fuck up." (Id. at 15). Fredendall denied that he said this to her. (Id.) One of the captains then asked one of the correctional officers if he had heard Fredendall say this to her, and the correctional officer allegedly "lied" and said that he had. (Id.) The captain then told Fredendall that they did not know why he had been transferred to FCI-Lewisburg, that the prison did not have the resources to house him, and that they were going to have him "shipped out somewhere else." (Id.) The officers then purportedly pushed Fredendall into a cell and told him that he could not have a wheelchair. (Id.)

After Fredendall was in the cell, the officers purportedly opened the door, told him to stand up, grabbed him by his handcuffed hands, and then "let go" of him, causing him to fall to the floor and hurt his wrists, back, and knees. (Id.) Fredendall crawled to his bed, but the officers made him crawl back so that they could uncuff

---

[1] The complaint does not provide her name.

him. (Id.) The officers purportedly "mocked" and "laughed" at him the whole time. (Id.) About an hour later, the officers allegedly brought Fredendall a meal, but did not bring him any utensils or a cup. (Id.)

The next morning, the officers allegedly woke Fredendall up and placed his wheelchair outside the cell, forcing him to crawl out of the cell to get to the wheelchair. (Id.) He was then taken to a room to change clothes so that he could be taken to a different facility. (Id.) The officers continued to "mak[e] jokes" about him during this period. (Id.) The officer who had handcuffed him the day before handcuffed him again and cuffed his ankles. (Id.) The officer purportedly told another officer that he had tried to get a captain to put another inmate in the cell with Fredendall to "to take care of [him]/take [him] out," but that the captain refused to do so. (Id. at 16). The officer then allegedly stated, "we can just shoot him!" (Id.) The other officer responded, "call so and so, he will come down here and do it and dump him somewhere." (Id.) The officers began to push Fredendall's wheelchair through the prison. (Id.) Fredendall asked for water, but one of the officers told him that they only had water for themselves and not for him. (Id.)

The officers took Fredendall to the bottom of a staircase and told him to get up. (Id.) Fredendall began to stand up, at which point the officer grabbed him under his arm and by the handcuffs. (Id.) Fredendall repeatedly fell down, but the officer purportedly "dragged" him up the stairs by the handcuffs. (Id.) Fredendall protested that he was in pain. (Id.) After getting to the top of the steps, the officer put Fredendall in a wheelchair and pushed him to a "handicap van." (Id.) Fredendall

4

asked to have his handcuffs loosened, at which point the officer allegedly started "yanking them over and over against the bones in [Fredendall's] wrists trying to yank them over [his] bones." (Id.) Fredendall purportedly felt like the officer was breaking his wrists. (Id.)

The officer drove Fredendall approximately three hours to FCI-Otisville. (Id.) When they arrived at FCI-Otisville, the officer purportedly told an officer from FCI-Otisville that "he should let go of [Fredendall's] wheelchair going down the mountain so [he would] crash into the building." (Id.) The officer purportedly stated that this would "do everyone a favor and make them happy." (Id.)

## II.     Legal Standard

The Prison Litigation Reform Act authorizes a district court to review a complaint in a civil action in which a prisoner seeks redress against a governmental employee or entity. 28 U.S.C. § 1915A.[2] The court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state

---

[2] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
    **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
    **(2)** seeks monetary relief from a defendant who is immune from such relief.

a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In screening claims the court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Coward v. City of Philadelphia, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021); Smith v. Delaware, 236 F. Supp.3d 882, 886 (D. Del. 2017). This standard requires the court to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual

allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### III.    Discussion

Liberally construing Fredendall's complaint, it appears that he asserts claims arising from his time in FCI-Lewisburg under two legal theories: Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). Both claims are subject to dismissal.

In Bivens, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. Bivens, 403 U.S. at 397. In over 50 years since Bivens was decided in 1971, the Supreme Court has extended Bivens only twice: first, to a claim for sex discrimination under the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison

medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 18-23 (1980).

Prior to the Supreme Court's decision in Ziglar v. Abbasi, 582 U.S. 120 (2017), lower courts often recognized Bivens claims in contexts other than those recognized by Bivens, Davis, and Carlson. Ziglar and its progeny, however, severely limit the class of cases in which Bivens may proceed. Ziglar sets forth a two-part test for determining whether a Bivens claim may proceed. First, courts must ascertain whether the case presents a "new context." Id. at 138. If the case differs "in a meaningful way" from previous Bivens cases decided by the Supreme Court, "then the context is new." Id. at 139. Second, if the case presents a new context, the court must consider whether "special factors" counsel against extending Bivens. Id. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." Egbert v. Boule, 596 U.S. 482, 492 (2022) (quoting Ziglar, 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying Bivens in a new context," then special factors counseling hesitation exist and a Bivens remedy does not lie. Id. (quoting Hernandez v. Mesa, 589 U.S. 93, 102 (2020)).

The United States Court of Appeals for the Third Circuit has confirmed that Ziglar and its progeny "unequivocally narrow[] the universe of relevant cases" in the Bivens context "to just three," i.e., Bivens, Davis, and Carlson. Fisher v. Hollingsworth, 115 F.4th 197, 204 (3d Cir. 2024). Under Fisher, "unless a case is

8

indistinguishable from <u>Bivens</u>, <u>Davis</u>, or <u>Carlson</u>, a damages remedy may be created by Congress, but not by the courts." <u>Id.</u> at 205.

Fredendall's complaint, liberally construed, advances <u>Bivens</u> claims for excessive force and verbal harassment by prison officials at FCI-Lewisburg. Both claims present new contexts for <u>Bivens</u>. The Supreme Court "has not recognized an Eighth Amendment [<u>Bivens</u>] claim arising from a correctional officer's use of excessive force against a prisoner." <u>Landis v. Moyer</u>, No. 22-2241, 2024 WL 937070, at *2 (3d Cir. Mar. 5, 2024); <u>see also</u> <u>Alsop v. Fed. Bureau of Prisons</u>, No. 22-1933, 2022 WL 16734497, at *3 (3d Cir. Nov. 7, 2022) (noting that alleged use of force by correctional officers is "not a basis for relief under <u>Bivens</u>"). Similarly, verbal harassment clearly presents a new context for <u>Bivens</u>.[3] <u>Hale v. Getz</u>, No. 4:25-CV-1901, 2026 WL 396446, at *5 (M.D. Pa. Feb. 12, 2026).

Having concluded that Fredendall's claims present new contexts for <u>Bivens</u>, the court must determine whether any special factors counsel against extending <u>Bivens</u>. <u>Fisher</u> controls this analysis. <u>Fisher</u> holds that the BOP's administrative remedy program is a special factor barring extension of <u>Bivens</u>. <u>Fisher</u>, 115 F.4th at 208. The court will accordingly dismiss the <u>Bivens</u> claims because they present new contexts for <u>Bivens</u> and the BOP's administrative remedy program is a sufficient reason for the court not to recognize <u>Bivens</u> claims in those contexts.

---

[3] In any event, even if verbal harassment did not present a new context, the claim would be subject to dismissal because verbal harassment by prison officials does not violate a prisoner's constitutional rights. <u>See, e.g.</u>, <u>Sears v. McCoy</u>, 815 F. App'x 668, 670 (3d Cir. 2020); <u>Rieco v. Moran</u>, 633 F. App'x 76, 79 (3d Cir. 2015).

Turning to the FTCA, before a plaintiff may file an FTCA claim in federal court, he must exhaust administrative remedies by presenting the claim to the appropriate federal agency. 28 U.S.C. § 2675(a). The claim may be filed in federal court after either (a) the agency denies the claim in writing, or (b) the agency has failed to rule on the claim within six months of its filing. Id. Exhaustion of administrative remedies for an FTCA claim is jurisdictional and cannot be waived. Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015). The failure to exhaust prior to filing suit in federal court also cannot be cured by completing the administrative process after filing suit. McNeil v. United States, 508 U.S. 106, 112-13 (1993).

Here, Fredendall has not produced any evidence that he presented his FTCA claims to the BOP prior to filing this suit, nor has he shown that he received a final denial from the BOP. And even if Fredendall did present the claim to the BOP and simply did not receive a final denial, it is not possible that six months elapsed between his presentment of the claim to the BOP and the filing of this case: his claims arise from events that occurred in November 2025, and he filed this case approximately five months later in April 2026. Thus, his FTCA claims must be dismissed without prejudice for lack of subject matter jurisdiction because he did not exhaust administrative remedies prior to filing this case.

Before dismissing a civil rights complaint for failure to state a claim, courts must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. The court will deny leave to amend as futile.

Fredendall's <u>Bivens</u> claims fail as a matter of law, and his FTCA claims must be dismissed for failure to exhaust administrative remedies.

## IV.    <u>Conclusion</u>

This case is dismissed pursuant to 28 U.S.C. § 1915A. Plaintiff will not be granted leave to file an amended complaint. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    May 20, 2026

11